UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER ANDERSON,

                Petitioner,

v.                                 Case No. 3:18-cv-648-MMH-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

## ORDER

### I. Status

Petitioner Christopher Anderson, an inmate of the Florida penal system, initiated this action on March 14, 2018,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] He filed an Amended Petition (Amended Petition; Doc. 4) on June 18, 2018. In the Amended Petition, Anderson challenges a 2014 state court (Duval County, Florida) judgment of conviction for first degree murder and possession of a firearm by a convicted felon on one ground. Respondents have submitted a memorandum in

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

opposition to the Amended Petition. See Answer in Response to Order to Show Cause (Response; Doc. 11). They also submitted exhibits. See Docs. 11-1 through 11-11. Anderson filed a brief in reply. See Reply to State's Answer in Response to Order to Show Cause (Reply; Doc. 20). This action is ripe for review.

## II. Relevant Procedural History

On July 2, 2013, the State of Florida charged Anderson with first degree murder (count one) and possession of a firearm by a convicted felon (count two) in case number 16-2013-CF-004703-AXXX-MA. See Doc. 11-1 at 37-38, Indictment. At the conclusion of a trial on December 12, 2013, a jury found Anderson guilty, as charged. See Docs. 11-1 at 90-92, Verdict; 11-2 through 11-3, Transcripts of the Trial Proceedings (Tr.), at 862-63, 884.[3] On January 17, 2014, the circuit court sentenced Anderson to a term of life imprisonment with a forty-two-year mandatory minimum term for count one and a fifteen-year term of imprisonment with a three-year mandatory minimum term for count two, to run concurrently with the sentence imposed for count one. Doc. 11-1 at 184-92, Judgment; 234-74, Transcript of the Sentencing Hearing.

---

[3] The Court will cite the page number in the upper-righthand corner of the transcript.

On direct appeal, Anderson, with the benefit of counsel, filed an initial brief, arguing that the trial court fundamentally erred when it gave an incomplete jury instruction on self-defense pursuant to Florida Statutes section 776.012(1) (ground one), and erred when it gave, over Anderson's objection, the standard jury instruction on provocation by an initial aggressor when there was no evidence that Anderson was an initial aggressor during the shooting incident (ground two). See Doc. 11-4.  The State filed an answer brief, see Doc. 11-5, and Anderson filed a counseled reply brief, see Doc. 11-6. On December 17, 2014, the appellate court (First DCA) affirmed Anderson's conviction and sentence per curiam without issuing a written opinion, and issued the mandate on January 5, 2015. See Doc. 11-7.

Anderson filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) on May 30, 2015. See Doc. 11-8 at 5-17. In his request for postconviction relief, Anderson asserted that his trial counsel was ineffective because she: failed to adequately advise him about the benefits of entering an open plea to second degree murder, and misadvised him about the justifiable use of deadly force defense (ground one), see id. at 7-11, and also failed to request a heat-of-passion jury instruction (ground two), see id. at 11-14. Additionally, as ground three, he argued that the cumulative effect of counsel's errors deprived him of a fair trial. See id. at 14. On October 27, 2014, the circuit court denied Anderson's Rule

3

3.850 motion. <u>See</u> <u>id.</u> at 112-21. The First DCA affirmed the circuit court's denial of Anderson's Rule 3.850 motion per curiam without issuing a written opinion on June 5, 2017, and issued the mandate on July 5, 2017. <u>See</u> <u>id.</u> at Doc. 11-11.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Anderson's] claim[s] without

further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a

"contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394 (2019). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Additionally, the United States Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective-assistance-of-counsel claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). In companion decisions in Missouri v. Frye, 566 U.S. 134 (2012), and Lafler v. Cooper, 566 U.S. 156 (2012), the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (footnote omitted). The Court articulated a four-part test to prove prejudice in the context of a foregone guilty plea. Lafler, 566 U.S. at 164; see Frye, 566 U.S. at 147.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

Anderson asserts that his trial counsel (Assistant Public Defender Melina Buncome) was ineffective because she misadvised him about the justifiable use of deadly force defense during the plea negotiations. See Amended Petition at 3-5. He states that he rejected the State's offer of an open plea to second degree murder based on counsel's misadvice, and instead proceeded to a trial where the jury found him guilty of first degree murder, and the court sentenced him to life imprisonment. See id. at 4. He maintains that counsel failed to sufficiently evaluate the facts, advise him about the initial aggressor exception to the justifiable use of deadly force defense, and explain the likelihood of a conviction if he proceeded to trial. See id. According to Anderson, he would have accepted the State's plea offer if counsel had properly advised him, and the court "more than likely" would have imposed a forty-two-year term of incarceration. Id.

Anderson raised a similar ineffectiveness claim in his Rule 3.850 motion. See Doc. 11-8 at 7-11. The postconviction court denied relief on this claim, explaining in pertinent part:

> In Ground One, Defendant contends counsel was ineffective for failing to strongly advise Defendant to accept the State's offer to enter an open plea to second degree murder. Defendant states counsel informed him entering an open plea was "worth considering."[5]

---

[5] See Doc. 11-8 at 7-8.

However, Defendant claims counsel should have been more adamant in advising him to enter an open plea[]. According to Defendant, counsel should have explicitly recommended or coaxed Defendant into entering an open plea due to the facts of the case and eyewitness evidence against him. Furthermore, Defendant alleges counsel misadvised him about the applicability of the justifiable use of deadly force defense. Defendant claims counsel failed to inform him an initial aggressor is precluded from asserting self-defense. The evidence presented at trial allegedly demonstrated Defendant did not exhaust every reasonable means to escape the danger. Therefore, the defense of justifiable use of deadly force was inapplicable, and, thus, his counsel should have advised him to enter an open plea. But for this alleged lack of advice, Defendant contends he would not have proceeded to trial and would have entered an open plea to second degree murder.

Where a defendant alleges ineffective assistance of counsel for failure to adequately convey a plea offer, the defendant must show a reasonable probability the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Alcorn v. State, 121 So. 3d 419, 430 (Fla. 2013). Specifically, to establish prejudice as required by Strickland,

> the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe

> than under the judgment and sentence
> that in fact were imposed.

Alcorn, 121 So. 3d at 430. Here, Defendant does not assert counsel never advised him of the State's offer to enter an open plea to second degree murder. Instead, Defendant maintains counsel should have been more persuasive in advising Defendant to accept the offer based on the evidence against him. The Court finds the record, however, demonstrates counsel did thoroughly review the plea offer with Defendant and he made a knowing decision to reject the offer. On August 21, 2013, the Court held a Nelson[6] hearing. (Ex. D.)[7] During the Court's inquiry, Defendant, after being placed under oath, complained that counsel attempted to force him to accept a plea deal, an accusation that entirely contradicts his current claim. (Ex. D at 4-5.) In response to Defendant's assertions, counsel explained [that] the State presented Defendant with an offer to plea[d] to second degree murder and in exchange the State would not indict Defendant on first degree murder. (Ex. D at 11.) Counsel stated she advised Defendant of every aspect of his case and provided him with all discovery. (Ex. D at 11-13.) According to counsel, Defendant made an informed decision not to accept the State's offer and declined to plea[d] guilty to second degree murder. (Ex. D at 11.)

Defendant's unwillingness to accept the State's offer is further exemplified by Defendant's subsequent offer to the State. Notably, on December 9, 2013, prior

---

[6] In Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), the Fourth District Court of Appeal held that if an indigent defendant expresses a desire to discharge court-appointed counsel because of counsel's ineffectiveness, the trial court must hold a hearing to determine whether there is reasonable cause to believe that the court-appointed counsel is not rendering effective assistance to the defendant.

[7] See Doc. 11-8 at 140-57.

to jury selection, counsel advised the Court that Defendant conveyed a plea offer to the State. (Ex. E at 13.)[8] Specifically, Defendant offered to plea[d] guilty to manslaughter in return for a fifteen-year term of incarceration, followed by ten years of probation. (Ex. E at 13.) The State acknowledged and rejected the offer. (Ex. E at 13.)

The record also refutes Defendant's claim that counsel, in conveying the plea offer, failed to advise Defendant the justifiable use of deadly force defense was irrelevant. Here, Defendant contends this defense was inapplicable because there <u>was</u> evidence Defendant was the initial aggressor. On direct appeal, however, Defendant claimed the Court erred in giving the justifiable use of force instruction because there <u>was</u> <u>no</u> evidence Defendant was the initial aggressor.[9] (Ex. F at 19.)[10]

At trial, the jury was instructed on two theories of justifiable use of deadly force. (Ex. G at 4-5, 13-14.) Specifically, the instructions followed 776.012[,] Florida Statutes (2013), which is justifiable use of deadly force when a defendant is not the initial aggressor, and section 776.041, Florida Statutes, (2013), which is justifiable use of deadly force when defendant is the initial aggressor. (G at 13-14.)

As detailed in the Attorney General's [Answer] Brief on direct appeal, counsel and the State presented conflicting evidence at trial regarding who was the initial aggressor. (Ex. H at 12.)[11] Counsel argued the victim was the initial aggressor, calling Artiesha

---

8 <u>See</u> Doc. 11-8 at 162.

9 <u>See</u> Docs. 11-4 through 11-6 (direct appeal briefs).

10 <u>See</u> Doc. 11-9 at 119.

11 <u>See</u> Doc. 11-5 at 18.

Anderson (A.A.) [(Defendant's sister)] as a witness, who testified she saw the victim holding Defendant by his neck. (Ex. E at 578-81.)[12] A.A. testified that when Defendant returned to the party, the victim and Alvin Morris rushed him and continued pushing him and calling [him] profane names and that is the point when she first heard shots. (Ex.[]E at 587-89.) Vanessa Anderson (V.A.) [(Defendant's mother)] testified she was trying to prevent the other men from beating up Defendant. (Ex. E at 606.) [V.A.] stated that when she came outside, she observed Alvin Morris pushing and shoving Defendant. (Ex. E at 604.) [V.A.] said it was at that point that 'all hell broke loose' and she heard shots fired. (Ex. E at 605.) Finally, Defendant testified the victim grabbed him by the throat and was choking him because he did not want to talk to the victim. (Ex. E at 656.) Defendant stated his sister broke up the confrontation and he left the party. (Ex. E at 657-658.) When Defendant returned to the party, Alvin Morris met him at the gate and was pushing him, then, the victim threw down his cup and rushed toward defendant. (Ex. E at 658-60.) Defendant identified photos of the injuries he sustained from the victim and others that night. (Ex. E [at] 662-64.)

The State, on the other hand, presented evidence Defendant was the initial aggressor[.] Belinda Jones [(the victim's fiancé)] testified Defendant bumped into the victim and the victim responded by pushing Defendant by the neck. (Ex. E at 304.) Ms. Jones testified Defendant threatened to kill everyone at the party. (Ex. E at 302-[]04.) Ms. Jones further testified, upon Defendant's return to the party he pulled up in a vehicle very fast and tried to run toward the victim. (Ex. E at 307.) Ms. Jones stated others at the party tried to hold Defendant to prevent him from running up to the victim. (Ex. E at 306-07.) Alvin Morris testified that when Defendant returned

---

[12] See Tr. at 581.

to the party and after observing the victim was still there, Defendant went to his car and grabbed a gun. (Ex. E at 340-41.) Mr. Morris testified that after retrieving the gun from the vehicle, Defendant walked straight to the victim and shot him twice. (Ex. E at 342.) Herman Neeley testified that as Defendant left the party he threatened the victim. (Ex. E at 373.) Mr. Neeley stated that when Defendant returned to the party he grabbed a gun from his car, ran into the yard, and shot the victim. (Ex. E at 373-77.)

While Defendant's claim on direct appeal is slightly different than that raised here, the First District Court of Appeal's rejection of Defendant's claim on direct appeal shows the evidence at trial warranted the instructions on justifiable use of deadly force and, in turn, proved the assertions of such a defense was supported by the evidence. As such[,] Defendant's claim that counsel should have advised Defendant this defense was not applicable is wholly without merit.

Further, there is ample evidence Defendant understood the justifiable use of deadly force defense and specifically consented and agreed to counsel's presentation of the defense. Indeed, prior to opening statements, Defendant explained to the Court he reviewed the statutes and elected to move forward with self-defense rather than the stand your ground defense. (Ex. E at 237.) The Court asked Defendant if he discussed this decision with counsel, to which Defendant responded, "yes . . . ." (Ex. E at 236.) Specifically, Defendant stated he wanted to proceed with [Florida Statutes] section 776.012 instruction, "because I was reading and it say[s] . . . you don't have to retreat if you're stopping the commission of a forcible felony . . . ." (Ex. E at 235-37.) Again, the Court asked Defendant if he wanted to proceed under section 776.012 and if he agreed with that strategy, to which Defendant replied, "Yes Ma'[a]m[]. That is what I want." (Ex. E at 246.)

The Court finds the record confirms counsel did adequately advise Defendant of plea opportunities, which Defendant rejected. Counsel advised Defendant of all aspects of his case, provided Defendant with discovery and he ultimately made the informed decision not to accept the State's offer. Additionally, Defendant, under oath, accused his counsel of forcing him to enter a plea, the very thing he now alleges counsel failed to do. Furthermore, prior to trial, Defendant made an offer to the State to plea to manslaughter. This offer demonstrates Defendant, being fully aware of the evidence, was only willing to plea[d] to manslaughter and would not have accepted the offer of second degree murder. Finally, contrary to Defendant's allegations, counsel never misadvised Defendant about the applicability of the justifiable use of deadly force defense. The defense was applicable to Defendant's case and supported by the evidence counsel presented at trial; though, this defense was ultimately rejected by the jury. As such, the Court finds Defendant failed to satisfy the first prong of <u>Alcorn</u> and cannot show that but for counsel's alleged misadvice, he would have accepted the State's plea offer. Ground one is denied.

Doc. 11-8 at 113-18 (footnotes omitted). The First DCA affirmed the postconviction court's denial of relief without issuing a written opinion. <u>See</u> Doc. 11-11 at 2.

To the extent that the appellate court decided the claim on the merits,[13] the Court will address the claim in accordance with the deferential standard

---

[13] In looking through the appellate court's per curiam affirmance to the postconviction court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1192.

for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Anderson is not entitled to relief on the basis of this ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, the claim is without merit. A defendant has the right to effective assistance of counsel when considering whether to accept a plea offer. See Lafler, 566 U.S. 168 (addressing counsel's performance in advising defendant to reject a plea offer and proceed to trial); Frye, 566 U.S. 134 (addressing counsel's failure to communicate to defendant the prosecutor's written plea offer before it expired). In order to establish that a failure to adequately advise a defendant about a plea offer was prejudicial, a petitioner must demonstrate that (1) he "would have accepted the plea"; (2) "the prosecution would not have withdrawn it in light of intervening circumstances"; (3) "the court would have accepted its terms"; and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164; see Frye, 566 U.S. at 147; United States v. Smith, 983

F.3d 1213, 1221-22 (11th Cir. 2020); <u>Carmichael v. United States</u>, 966 F.3d 1250, 1259 (11th Cir. 2020).

A chronology of relevant facts related to the issue follows. In August 2013, Anderson asked the circuit court to remove his attorney (Melina Buncome) and replace her with another attorney from the Public Defender's Office. <u>See</u> Doc. 11-1 at 54. At an August 21, 2013 <u>Nelson</u> hearing on the motion, Anderson, under oath, stated that Buncome advised him "to plead out" to second degree murder instead of "looking at [his] side of the story." <u>Id.</u> at 216-17, 225. With Anderson present at a side-bar conference, Buncome recalled what had transpired when she discussed the State's plea offer with Anderson:

> Mr. Anderson has made several references to me wanting to make him plea. I did not, I have never encouraged him to plea. I said, look, the state attorney said – presented me with the option to Mr. Anderson that if he wanted to plea to a second degree murder they would not indict him, but he has to make that decision. I then went over to Mr. Anderson, **I explained to him that what the State is saying is that if he wants to go ahead and plead to the Court on the second degree murder then they would not proceed to an indictment.**[14] **At that point he made the informed decision not to plea[d] and decided he wanted to go forward with this case.**

---

[14] <u>See</u> Docs. 11-1 at 2 (state-court docket); 33, Information (charging Anderson with second degree murder and possession of a firearm by a convicted felon), filed June 7, 2013; 37, Indictment (charging Anderson with first degree murder and possession of a firearm by a convicted felon), filed July 2, 2013.

> Now, he indicated that I have not explained
> anything to him. We have gone over everything. I have
> gone over ever – in anticipating him saying that, I
> have had other colleagues go over, to be present while
> I have gone through every aspect of his case with him.
> He proceeds to – he thinks because I tell him what the
> facts are that I am not on his side. . . .

Id. at 223-24 (emphasis added). The court found that Anderson had not

presented facts sufficient to show that Buncome was ineffective, and therefore,

denied Anderson's request to remove her as his attorney. See id. at 228.

Additionally, on December 9, 2013, prior to jury selection, Buncome advised

the court that the State had rejected Anderson's counteroffer to plead guilty to

manslaughter in return for a fifteen-year term of incarceration followed by ten

years of probation. See Doc. 11-8 at 162. The prosecutor acknowledged that he

had received Anderson's counteroffer at a final pretrial hearing, but rejected

it. See id.

Notably, Anderson minimized his guilt throughout the proceedings. The

record reflects his desire to proceed to trial (to testify about his version of the

facts that he opined amounted to self-defense) or enter a plea to manslaughter

in exchange for a term of fifteen years of incarceration. At trial, the State

presented eyewitness testimony that Anderson had provoked the victim and

was the initial aggressor. Anderson testified that he defended himself when

the victim rushed toward him, see Tr. 658-60, 691, and his mother and sister

corroborated his version of the facts, see id. at 586-87, 609-11, which created a

21

factual issue (related to whether the force Anderson used was justified) for the jury to decide. As such, the evidence at trial warranted jury instructions on self-defense and the justifiable use of deadly force. See id. at 833-36.

There are strong indications in the record that Anderson was not willing to enter an open plea to second degree murder, especially during an early stage of the proceedings when discovery, including the depositions of eyewitnesses, was ongoing. See Doc. 11-1 at 218-20. Anderson's assertion that he would have accepted an open plea to second degree murder is undermined by his testimony at the Nelson hearing as well as his counteroffer to enter a plea to manslaughter in exchange for a fifteen-year term of incarceration.

Under the Lafler/Frye first prong, Anderson fails to show a reasonable probability that, but for counsel's misadvice, he would have accepted the State's open plea offer to second degree murder at a time when the facts detailing what had transpired that night were still unraveling. See Lafler, 566 U.S. at 164; Frye, 566 U.S. at 147. His conclusory assertion that he would have accepted the State's open plea offer to second degree murder, without more, is insufficient to satisfy the first prong of the prejudice test. Rosin v. United States, 786 F.3d 873, 879 (11th Cir. 2015) (stressing that the record evidence that the defendant "had absolutely no interest in" pleading guilty contradicted his later claim that he would have done so); see also Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

Accordingly, even assuming deficient performance by counsel, Anderson's ineffectiveness claim is without merit since he has not shown the required <u>Lafler</u>/<u>Frye</u> resulting prejudice. As such, he is not entitled to federal habeas relief.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Anderson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Anderson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a

23

claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Amended Petition (Doc. 4) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.     If Anderson appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of July, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-1 7/19
c:
Christopher Anderson, FDOC #148425
Counsel of Record

25